17 So.2d 177

**PEOPLES SAV. BANK v. SOUTHERN COTTON OIL CO.**

5 Div. 384.

Supreme Court of Alabama.

Jan. 13, 1944.

Rehearing Denied March 23, 1944.

Grady Reynolds and Reynolds & Reynolds, all of Clanton, for appellant.

U. G. Jones, of Wetumpka, and Ball & Ball, of Montgomery, for appellee.

**THOMAS, Justice.**

The appeal challenges the circuit court's decree in overruling demurrer to a cross bill and the appointment of the receiver of property which was subject to first and second mortgages.

The appeal was by the Peoples Savings Bank, a mortgagee, and H. F. & Bell Thompson, mortgagors. The record in this court is to the effect that the Thompsons have withdrawn their appeal and assignment of error. The brief in their behalf is filed without prejudice to appellant bank.

The original bill was by the Peoples Savings Bank to enjoin the foreclosure of a mortgage given by Thompson et als., to the appellees in 1934 when the latter sold mortgaged property to Thompson and others. The details of the several transactions vesting the title to the mortgaged property in respondent Thompson and wife, who were named respondents with their original grantee, the only appellee here, are set out in the record. The several conveyances are exhibited to and support the pleading.

Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90.

In selling the property to Thompson and associates for $7,201.68, payable in installments, it was the intention of the parties that a ginning and cotton seed business would be conducted by Thompson, and that he would put in incidents thereto and sell cotton seed meal and hulls and fertilizer from grantee, which was thought to be of mutual advantage to mortgagor and mortgagee. It is provided in the mortgage, after describing the mortgage debt and partial payments thereof to be made that, Thompson "may incur other indebtedness to" and that the mortgage was to stand as security for "the prompt payment of each of said notes when due, as well and also in all other additional indebtedness after they are authorized by us to be secured by note, open account or otherwise, and all extensions and/or renewals thereof." Such a conveyance has been sustained in the recent decision of Forlines v. Paulk et al., 243 Ala. 516, 10 So.2d 864.

In the summer of 1942 Thompson still owed the note due December 1, 1936, for $2,675 and other notes, open accounts and interest thereon, amounting to $10,000. The company initiated foreclosure proceedings in July 1942 by advertising the mortgaged property as provided in the terms of the mortgage.

In the meantime in 1937 Thompson had executed a mortgage for $5,000 in favor of complainant bank of date of October 14th and payable six months later on April 14, 1938, securing the same by properties described in appellee's mortgage made, as we have indicated, about three years earlier. On March 30, 1939, Thompson gave the bank another mortgage on the same property for $1,000 due December 1, 1939. The respective mortgages were promptly recorded as required by law. When appellee company began its proposed foreclosure in July 1942, the appellant bank filed its bill praying, among other things, that appellee company be enjoined from foreclosure pendente lite. Such order was made on October 5, 1942. In response to this injunctive order, the foreclosure by appellee company was suspended. Such order was still in force at the time of the trial of this case. Thus the injunction left Thompson in possession of the mortgaged property (gin and warehouse), and he was free to operate the same without hindrance by appellee company, and appellee was

without power to enforce its claim under the mortgage.

The record shows that under this injunctive decree Thompson operated the property during ginning season and up to the fall of 1942, the bank collecting the substantial amount of $1778 on its debt. The original bill purports to be for the purpose of redeeming under the bank's second mortgage from the first mortgage to appellee company.

The record shows that on October 23, 1942, the appellee company filed its answer to the original bill and incorporated therein and as a part thereof a cross bill asking for affirmative relief in the way of marshalling assets, for foreclosure, and for a judgment over against Thompson and for general relief. The bank and Thompson filed answer, respectively, to the cross bill. The record also shows that the case was at issue as to all parties to the pleading on April 23, 1943.

After hearing the testimony and reading the affidavits, the court granted the application for appointment of a receiver and for impounding the funds derived from the operation of the ginning plant and warehouse and appointed Griffin Tatum as receiver and fixed his bond. Said receiver was duly qualified as an official of the court in connection with such proceeding. From the above order the bank alone appealed.

 The cross bill as amended was not subject to demurrer. The defendant-complainant cannot obtain all relief under answer to which it is entitled under the cross bill. Patton v. Birmingham Trust & Savings Co., 235 Ala. 586, 180 So. 264; Long v. Monroe County Bank, 226 Ala. 26, 145 So. 471; Thompson v. Leyden, 222 Ala. 81, 130 So. 780; Manning v. Manning, 203 Ala. 186, 82 So. 436. See also Smith v. Colpack, 235 Ala. 513, 179 So. 520, where the statute is considered that broadened the scope of a cross bill as to notice. General Acts 1936–37, Ex.Sess. p. 208. Under the answer the Southern Cotton Oil Company, respondent in the original bill, could not have secured the appointment of receiver or impounded the funds earned in operation of the plant and warehouse; could not marshal assets as to the other property in the bank's mortgage, and could not have a moneyed judgment over against Thompson.

On this point the Patton case, supra, is similar. There is a bill for redemption, a third party was a party, and relief against that third party was sought. The court held that the cross bill was necessary. Here the cross bill asks for relief against the third party, Thompson. Surely this is an instance where the company cannot have relief against Thompson without a cross bill asking for it. Was the amended cross bill sufficient?

 In Parker v. Williams, 231 Ala. 569, 165 So. 848, 849, a mortgagor filed a bill to cancel a mortgage and in the alternative to be permitted to redeem. The respondent filed a cross bill asking for receiver charging that mortgagor was insolvent, in possession of the property, collecting the rents and the property was insufficient to pay the debt secured thereby. The decree appointed a receiver and was affirmed on appeal. After restating the rule that receivers should be appointed with great caution, Mr. Justice Knight wrote for the court as follows:

"But, while this is true, the court will not refuse to intervene and appoint a receiver when it is made to satisfactorily appear that the mortgagor is in possession, collecting the rents, is insolvent, and permits portions of the mortgaged property to be sold for taxes, and fails or refuses to keep buildings on the property insured, as by the terms of his mortgage he agreed to do. In other words, the court will not refuse the appointment of a receiver, when, by so doing, irreparable loss may result to the mortgagee. * *

"The appointment of a receiver is a matter addressed to the sound judicial discretion, revisable by the appellate court, and, of course, must be exercised with care. Albritton et al. v. Lott-Blackshear Commission Co., supra [167 Ala. 541, 52 So. 653]; Miller v. Lehman, Durr & Co., 87 Ala. 517, 519, 6 So. 361; Warren et al. v. Pitts et al., 114 Ala. 65, 21 So. 494."

To the same effect is Garland v. First National Bank, 231 Ala. 597, 165 So. 852, 853, where the appointment of a receiver on a cross bill was affirmed. The court said:

"However, by a long line of decisions by this court, the proposition is clearly recognized that in foreclosure proceedings, if the mortgagor is insolvent and the property is insufficient to pay the mortgage debt, a receiver may be appointed to intercept the rents, and it necessarily follows that, if there is such a state of affairs as that the rents will be wholly lost unless the court

intervenes and takes charge of the property, a proper case for a receiver is made out. * * *"

■ Thus it appears well settled that where the mortgagor is insolvent and the property is insufficient to pay the mortgage debt, it is within the discretion of the court to appoint a receiver.

The amended cross bill alleges that: "The said H. F. Thompson was then and is now insolvent. The value of the mortgaged property is not sufficient to satisfy this respondent's mortgage." See Albritton et al. v. Lott-Blackshear Commission Co., 167 Ala. 541, 52 So. 653; Parker v. Williams, 231 Ala. 569, 165 So. 848. It should be noted that an additional ground is: By virtue of its mortgage on said cotton gin property and warehouse, this respondent has, in equity, a lien on the profits derived from the operation of the gin machinery and the rents derived from the warehouse. Benefield v. Cox, 202 Ala. 677, 81 So. 633.

The oral testimony of Tatum, the receiver appointed by the court, shows that he was manager of the company for many years; that when the property was sold to Thompson it was valued at $7201.68; that the mortgage shows on its face that the parties contemplated future dealings and that additional indebtedness would necessarily be incurred; that eight years after the sale Thompson had not paid the purchase price and that his indebtedness is secured by the mortgage and was over $10,-000. Thompson's affidavit in the files practically shows that he was insolvent at the time of the trial when what he owed the present complainant and the complainant in the cross bill is considered. Thompson admits owing another indebtedness of $1500 and the chancellor was of the opinion, and it so impresses the court, that he was insolvent at the time of the hearing.

The testimony of Maddox was to the effect that the old gin outfit was worth $8,000 and the land, buildings and machinery $7,200. The affidavit of Goodgame was considered by the chancellor with reference to the other gin properties mentioned in the record.

■■ When the whole record is considered, we are impressed that, the trial court was justified in its rulings for appointment of receiver. The statute authorizing such appointment does not specify the qualifications or the limits of the authority of the court in such appointment. Mercantile Trust & Deposit Co. v. Florence Water Co., 111 Ala. 119, 19 So. 17. Be it remembered that a receiver derives his authority not from the party at whose instance he is appointed but from the court. Sullivan Timber Co. v. Black, 159 Ala. 570, 48 So. 870.

■ The property that is affected is put in the custody of such an officer of the court for the benefit of the party shown to be so entitled to it, and not to judge the title or to affirm the right of possession in the property. Union National Bank v. Kansas City Bank, 136 U.S. 223, 10 S.Ct. 1013, 34 L.Ed. 341.

■ When the court decided that a receiver should be appointed to operate the property, it was necessary to find someone experienced in conducting such business and familiar with its operation and financial requirements. Tatum testified of his long experience in dealing with gins, buying and selling seed, and there is evidence in the record that he was especially fitted for the appointment. The text of 53 Corpus Juris, 72, is to the effect that it is improper to appoint as receiver an agent of petitioning creditors, "in the absence of circumstances showing his special fitness or the propriety of appointing a person so closely connected with the party in interest."

■ We think the record here is sufficient in showing circumstances to prove that the receiver appointed was fit.

Adverting to the demurrer touching the failure of the original answer and cross bill not being verified, it is shown that, when such pleading was amended the jurisdictional facts were sufficiently set out: That the mortgage debt was in default; that injunction had issued; that the bank received the rents and profits of the operation of the business; that the property was neglected and exposed; that Thompson, co-respondent in the original bill, was insolvent; and that the property was not of sufficient value to pay the debts secured thereby. As to all this the amended cross bill broadened the issue of fact and was duly verified. Walling v. Oliver Farm Equipment Co., 244 Ala. 674, 15 So.2d 497.

■ The company's mortgage contained a provision for the sale to the company by Thompson 'of its cotton seed at current market price. The legality of such a provision is not involved. However, such agreements have been held valid and law-

ful. Terre Haute Brewing Co., v. Mc-Geever, 198 Ala. 474, 73 So. 889, 891. It is observed that contracts of purchase and sale to some extent injure other parties in that they prevent them from making the sale consummated by such contract. This is true of every contract to purchase in the future, but it may not be successfully contended that such contracts are for such reason void, "unless affecting persons or territory sufficient to constitute it a monopoly, pool, or trust of the article in question." The many authorities supporting this view are collected in Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 51 S.Ct. 476, 75 L.Ed. 1112, 83 A.L.R. 1168–1185.

We find no error in the respective rulings of the trial court made the subject of assignment of error and argued on appeal by the Peoples Savings Bank. We have indicated that the appeal of appellants Thompson has been duly withdrawn without prejudice.

The decree of the circuit court is affirmed and the costs are taxed against the bank.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.